**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID MORALES GARCIA,<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,<br>Respondents. | Case No. 5:26-cv-05781-AJR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION** |

**I.**

**INTRODUCTION**

On September 28, 2026, Petitioner David Morales Garcia (A# 232-636-730) ("Petitioner"), an immigration detainee then-proceeding *pro se*, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 6-7.) Also on September 28, 2026, Petitioner filed an *Ex Parte* Motion for Temporary Restraining Order. (Dkt. 3.) On October 8, 2026, Respondents Warden of Adelanto ICE Processing Center, Director of the Los Angeles Field Office for Immigration and Customs Enforcement ("ICE") and Enforcement and Removal Operations ("ERO"), U.S. Secretary of the

Department of Homeland Security ("DHS"), and the U.S. Attorney General (collectively, "Respondents") filed an Answer to the Petition and Opposition to the *Ex Parte* Motion for Temporary Restraining Order (the "Answer"). (Dkt. 11.) On October 9, 2026, the Court issued an Order Appointing Counsel for Petitioner. (Dkt. 14.) On October 16, 2026, Petitioner, now represented by counsel, filed a Traverse. (Dkt. 17.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 4, 16.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to either provide Petitioner a Rodriguez bond hearing within fourteen days or release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

Many of the background facts in this case are disputed. According to the Form I-213 provided by Respondents, Petitioner is a national and citizen of Mexico. (Dkt. 11-2 at 2.) Petitioner entered the United States at an unknown place on or about an unknown time without inspection by an immigration officer at a designated Port of Entry. (Id.) Petitioner alleges that he was released from immigration custody back in 2010 after immigration authorities determined that he was not a flight risk. (Dkt. 1 at 6.) However, Respondents dispute that Petitioner was previously detained by immigration authorities and released on parole. (Dkt. 11 at 2.)

Petitioner alleges that since being released into the United States in 2010, he has lived in the Untied States out of custody. (Dkt. 1 at 6.) Petitioner alleges that he has many ties to the community as a member of the Catholic Church in Florida and he also has family support. (Id. at 11.) Petitioner has three children all of whom are U.S. citizens. (Id.) Petitioner has been working full time for a construction concrete company for the past six years to support himself and his family. (Id.)

The Form I-213 states that Petitioner was convicted on May 20, 2013, in Lee County, Florida of the offense of aggravated assault with a deadly weapon and that the case is still ongoing. (Dkt. 11-2 at 2.) However, the Court notes that there is no other evidence in the record to support a conviction dated May 20, 2013. Instead, Respondents have provided a copy of an Information charging Petitioner with committing aggravated battery with great bodily harm on May 20, 2023. (Dkt. 11-1 at 20.) Thus, it appears likely that the reference to a conviction on May 20, 2013 may be a typographical error.

It appears that the charges related to the Information are ongoing. For example, Respondents have provided a copy of a Plea Offer to Petitioner dated February 12, 2026, offering Petitioner a sentence of 36 months in custody followed by 3 years of probation. (Id. at 22.) Respondents have also provided a copy of a Bond Recommendation and a Booking Report that appear to show Petitioner was denied bond based on concerns for flight risk and danger. (Id. at 4-7.) According to the Form I-213, immigration authorities took Petitioner into custody when he appeared for a court appearance on May 2, 2026, related to the charges for committing aggravated battery with great bodily harm. (Dkt. 11-2 at 2.) Petitioner was arrested pursuant to a Form I-200 Warrant for Arrest of Alien. (Dkt. 11-3.)

By contrast, Petitioner alleges that he was taken into immigration custody on April 30, 2026, without prior notice or a pre-deprivation hearing. (Dkt. 1 at 6.) Petitioner alleges that he has cooperated with immigration authorities regarding his removal, but that immigration authorities have been unable to remove him. (Id. at 11.) Respondents appear to state that Petitioner is not yet subject to a final order of removal and that his next individual hearing in removal proceedings is scheduled for November 5, 2026. (Dkt. 11 at 2.)

\\

\\

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that his arrest by immigration authorities without a warrant of arrest violated the Immigration and Nationality Act ("INA"). (Dkt. 3 at 6.) Petitioner's second claim for relief is that his detention without prior notice or a pre-deprivation hearing violated his procedural due process rights. (Id.) Petitioner's third claim for relief is that his continued detention violates his substantive due process rights. (Id.) Petitioner's fourth claim for relief is that he has been denied a meaningful bond hearing in violation of 8 U.S.C. § 1226(a) and the Administrative Procedure Act ("APA"). (Id. at 6-7.) Petitioner seeks immediate release from custody. (Id. at 7; Dkt. 1 at 7.) Petitioner also seeks an order enjoining Respondents from re-detaining him absent a pre-deprivation hearing. (Dkt. 1 at 7.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether

there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, Respondents acknowledge that Petitioner has an available remedy in the form of a bond hearing pursuant to the injunction issued in the Rodriguez class action once he has been detained for six months. (Dkt. 11 at 3 ("Petitioner can also seek a *Rodriguez* bond hearing in the Immigration Court after 180 days of total detention time.")); see Rodriguez v. Holder, 2013 WL 5229795, at *3 (C.D. Cal. Aug. 6, 2013) ("Members of all four subclasses—Sections 1231, 1226(a), 1226(c), and 1225(b)—should be afforded bond hearings after six months of detention, consistent with Rodriguez II. The procedural requirements of the bond hearings should be consistent with the findings of the Ninth Circuit in Singh, and Rodriguez II. Additionally, bond hearings should be provided automatically, and plain language notice, in writing, of the bond hearings should be provided to detainees prior to the hearing."), aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 138 S. Ct. 830 (2018); Rodriguez v. Marin, 2020 WL 13348414, at *1 (C.D. Cal. Mar. 9, 2020) (affirming that the preliminary injunction in the Rodriguez class action continues to apply to individuals detained in the Central District of California under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c)); Rodriguez v. Marin, 2020 WL

13724475, at *1 (C.D. Cal. May 28, 2020) (denying motion to vacate preliminary injunction and decertify the class).[1] "Under the preliminary injunction, at the conclusion of each bond hearing, the Immigration Judge ('IJ') shall release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government shows by clear and convincing evidence that continued detention is justified based on his or her danger to the community or risk of flight." Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir. 2013) (internal quotation marks omitted).

According to the Form I-213, Petitioner was detained by immigration authorities on May 2, 2026. (Dkt. 11-2 at 2.) Therefore, Petitioner was entitled to receive a Rodriguez bond hearing as of October 29, 2026 (May 2, 2026, plus 180 days). Thus, the Court concludes that it is appropriate to direct Respondents to provide this relief. Accordingly, the Court concludes that the Petition should be granted at least with the relief that Petitioner receive a Rodriguez bond hearing within fourteen days. Thus, the only question is whether Petitioner is also entitled to immediate release from custody.

The record reflects that Petitioner was being held in detention by Florida authorities pursuant to an ongoing prosecution for aggravated battery with great bodily harm. (Dkt. 11-1 at 4-7, 20, 22.) According to the Form I-213, immigration authorities took Petitioner into custody when he appeared for a court appearance on May 2, 2026 related to the charges. (Dkt. 11-2 at 2.) Petitioner was arrested pursuant to a Form I-200 Warrant for Arrest of Alien. (Dkt. 11-3.) Thus, it appears that immigration authorities had a lawful basis to take Petitioner into custody. See 8

[1] On October 19, 2021, the Ninth Circuit reversed the district court and remanded with instruction to vacate the injunction. See Rodriguez v. Barr, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021). However, the mandate has not issued because the petitioners filed a Motion to Stay Proceedings or, Alternatively, Petition for Panel Rehearing on October 22, 2206, which is still pending. (See Ninth Circuit Case No. 20-55770, Dkt. 86.)

U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); 8 C.F.R. § 287.7(a) ("Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency."); Marks v. Clark, 2008 WL 5516506, at *2 (W.D. Wash. Oct. 7, 2008) ("ICE had proper authority to arrest and detain petitioner on April 11, 2006, based on the March 23, 2006, immigration detainer and the August 15, 2005, Notice to Appear and warrant of arrest, and his detention is not unlawful for that reason."), report and recommendation adopted, 2009 WL 123263 (W.D. Wash. Jan. 15, 2009).

Moreover, it also appears that Petitioner is subject to mandatory detention under the Laken Riley Act because he is currently charged with aggravated battery with great bodily harm. (Dkt. 11-1 at 20); 8 U.S.C. 1226(c)(1)(E)(ii) (stating that any alien who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any . . . crime that results in death or serious bodily injury to another person" shall be taken into custody). Accordingly, the Court agrees with Respondents that Petitioner is not entitled to release, but is entitled to a Rodriguez bond hearing.[2] (Dkt. 11 at 3.)

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. **No later than fourteen days from entry of Judgment,** Respondents shall either provide Petitioner David Morales Garcia (A# 232-636-730) ("Petitioner") with a bond

---

[2] The Rodriguez injunction applies to aliens detained under 8 U.S.C. § 1226(c). See Rodriguez, 2020 WL 13348414, at *1 (affirming that the preliminary injunction in the Rodriguez class action continues to apply to individuals detained in the Central District of California under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c)).

hearing pursuant to the injunction in Rodriguez v. Robbins, 715 F.3d 1127, 1131 (9th Cir. 2013), at which the Government bears the burden of proof by clear and convincing evidence to show that Petitioner is a danger to the community and/or a flight risk that cannot be mitigated by conditions of release including, but not limited to, electronic monitoring, or release Petitioner from custody if such bond hearing is not timely provided (except that if Petitioner requests a delay, then the hearing may be provided beyond the fourteen-day deadline and Respondents shall grant any reasonable request for delay). Respondents shall file a notice of compliance no later than **three days after the bond hearing occurs**.

IT IS SO ORDERED.

DATED: November 16, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE